**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIMEI WEI,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-06728-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Limei Wei, a citizen of China, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Ms. Wei entered the United States in or about October-November 2022, and was apprehended by immigration authorities near San Ysidro, California. DHS issued Ms. Wei an expedited removal order, but released her about four weeks later. For the past four years, Ms. Wei has lived at liberty in the United States. On October 23, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Ms. Wei in Van Nuys, California. Ms. Wei filed the instant

Petition on November 10, 2026, alleging her arrest and re-detention violated 8 U.S.C. § 1231(a)(6) and its implementing regulations, and due process.

For the reasons that follow, the Court concludes that Respondents violated Section 1231(a)(6) by revoking Ms. Wei's release without notice, an interview, or an opportunity to be heard, and without any showing that her removal is reasonably foreseeable. Accordingly, the Court grants the Petition and orders Ms. Wei's immediate release.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Limei Wei is a citizen of China. Dkt. 1 at 2. She first entered the United States near San Ysidro, California, in or around October-November 2022 and was apprehended by immigration authorities shortly thereafter. Dkt. 1 at 4; Dkt. 8-1 at 3. Petitioner was placed in expedited removal proceeding and referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear determination after expressing fear of persecution or torture if returned to China. Dkt. 1 at 4; Dkt. 8-1 at 3. An asylum officer made a negative credible fear finding, which was later affirmed by an Immigration Judge. Dkt. 8-1 at 3. DHS released her from custody after about four weeks in detention. Dkt. 1 at 4. On February 13, 2023, Petitioner filed an Application for Asylum and Withholding of Removal with USCIS, which remains pending. Dkt. 8-1 at 3.[1]

On October 23, 2026, ICE arrested and re-detained Petitioner during a targeted removal operation in Van Nuys, California. Dkt. 8-1 at 2. Petitioner was not provided any written notice revoking her release. Dkt. 1 at 4.

---

[1] Despite this pending application, Respondents maintain that Petitioner is immediately removable based on the expedited removal order issued in 2022. Dkt. 8-1 at 3-4.

Petitioner also asserts Respondents have not shown her a travel document or provided a date or plan for her removal. *Id.* at 6.

Petitioner filed the instant habeas petition on November 10, 2026. Dkt. 1. She alleges that (1) Respondents did not follow the proper, statutorily required procedures in revoking her release; (2) Respondents have not shown her removal is significantly likely in the reasonably foreseeable future, or that Petitioner is a danger or flight risk, and thus her re-detention violates 8 U.S.C. § 1231(a)(6) and substantive due process; and (3) Respondents infringed on the protected liberty interest she enjoyed for four years before arresting and re-detaining her in violation of procedural due process. *Id.* at 4-10. Petitioner requests immediate release. *Id.* at 10-11.

Respondents filed their response on November 17, 2026. Dkt. 8. They contend (1) it is Petitioner's burden under *Zadvydas v. Davis*, 522 U.S. 678 (2001), to establish no significant likelihood of removal in the reasonably foreseeable future because she has been detained for less than six months, and she has not met that burden; (2) Petitioner has not shown that the Government lacked authority to detain her; and (3) Petitioner is not entitled to a pre-deprivation hearing. *Id.* at 2-6. Respondents provide Petitioner's I-213 (Record of Deportable/Inadmissible Alien), her I-200 (Warrant for Arrest of Alien), and her I-205 (Warrant of Removal/Deportation). Dkt. 8-1. However, Respondents do not provide a travel document. Petitioner filed a reply on November 19, 2026. Dkt. 9.

## II. DISCUSSION

The Court concludes that Petitioner is entitled to release because Respondents have not shown a significant likelihood of her removal in the reasonably foreseeable future and because they revoked her release without

providing adequate notice, an interview, or an opportunity to be heard.

**A. Detention and Release under Section 1231.**

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Because the

statute only authorizes a “reasonable” period of detention to effectuate removal, “as the period of prior postremoval confinement grows, what counts as the ‘reasonably foreseeable future’ conversely would have to shrink.” *Id.*

The Government has adopted regulations to implement its authority to detain or release noncitizens under Section 1231(a). 8 C.F.R. § 241.4, titled “Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period,” sets out “procedures DHS must follow to impose continued detention” beyond the removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). 8 C.F.R. § 241.13, titled “Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future,” sets out procedures to implement the statutory limit recognized in *Zadvydas*. *Id.* Sections 241.13(g)(1) and 241.13(h) provide that the Government “shall” release a noncitizen on an “order of supervision” if it determines that their removal is not reasonably foreseeable, unless “there are special circumstances justifying continued detention.”

For noncitizens released on an OSUP because their removal proved impracticable, the regulations also specify procedures for the Government to revoke their OSUP and re-detain them. DHS may revoke the noncitizen’s OSUP if they violate their conditions of release, 8 C.F.R. § 241.13(i)(1), or “if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future,” 8 C.F.R. § 241.13(i)(2). *See also Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3 (C.D. Cal. Oct. 28, 2025) (“[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)....”). Thus, the regulation “requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the

reasonably foreseeable future." *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023)).

**B. Respondents Have Not Demonstrated that Petitioner may be Removed in the Reasonably Foreseeable Future**

Respondents argue Petitioner's detention is still within the presumptively reasonable six-month *Zadvydas* window and, accordingly, her continued detention is permissible. Dkt. 8 at 2-3. Petitioner observes this does not respond to her claim, namely, she "challenges the unlawful revocation of [her] release, not the length of her detention." Dkt. 9 at 3.

This Court agrees with Petitioner, and the weight of authority in this District, that the Government bears the burden to demonstrate that Petitioner's removal is reasonably foreseeable in order to lawfully revoke her release and re-detain her. *See Nguyen v. Marin*, 5:26-cv-01130-JFW-MAR, 2026 WL 822535, at *3 (C.D. Cal. Mar. 20, 2026); *Truong v. Lyons*, 5:26-cv-00021-AS, 2026 WL 855150, at *6 (C.D. Cal. Mar. 20, 2026); *Pham v. Marin*, 5:26-cv-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026); *Espada v. Doe*, No. 5:25-cv-02983-JWH-KES, 2026 WL 181539, at *3-4 (C.D. Cal. Jan. 20, 2026), *adopted*, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); *Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, (C.D. Cal. Nov. 3, 2025); *El Abed v. Noem*, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4 (C.D. Cal. Oct. 28, 2025).

Section 241.13(i)(2) authorizes the Government to revoke a noncitizen's release pursuant to Section 1231 "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." While the regulation does not

expressly state that the Government bears the burden to show a significant likelihood of removal, the legal context in which it was adopted and principles of statutory interpretation compel that result.

As discussed above, Section 241.13 was promulgated to implement the Supreme Court's decision in *Zadvydas*. *See Johnson*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court instructed that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the Government cannot rebut the noncitizen's showing, then the noncitizen's detention is "no longer authorized by statute" and they must be released "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699-700.

Section 241.13 codifies this burden-shifting framework. It first provides procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release on an order of supervision ("OSUP"). *See* 8 C.F.R. § 241.13(d)-(g). It then provides authority for DHS to revoke that OSUP and re-detain them where they violated the terms of their release or "changed circumstances" establish that their removal is now reasonably foreseeable. *Id.* § 241.13(i)(1)-(3).

The provision authorizing revocation of an OSUP based on "changed circumstances," Section 241.13(i)(2), therefore only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); *id.* at § 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not

significantly likely in the reasonably foreseeable future"). This means that noncitizens subject to revocation of their OSUP have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To be consistent with *Zadvydas*, then, Section 241.13(i)(2) must be construed to place the burden DHS to "rebut" that showing by demonstrating there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future "on account of changed circumstances."

To the extent there is any ambiguity, principles of statutory construction support this reading of the regulation. "Absent specific statutory or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the 'default rule' that the burden falls on the party who 'generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion.'" *Roble v. Bondi*, 803 F. Supp. 3d 766, 773 (D. Minn. 2025) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

This reading also avoids the serious constitutional concerns posed by the Government's position. *Zadvydas* construed Section 1231(a) not to authorize detention where removal is not reasonably foreseeable because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As multiple courts have observed, the Government's reading of Section 241.13(i)(2) would raise similar concerns by placing the burden on the noncitizen to demonstrate they should be released when the Government made the unilateral determination that the noncitizen's prior showing—that their removal was not reasonably foreseeable and therefore their detention potentially indefinite—was no longer sufficient.

*See Luu*, 2025 WL 3552298, at *6 ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*."); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."). Construing Section 241.13(i)(2) to place the burden on the Government is not only most faithful to the text and its context, but would also avoid these serious constitutional concerns. *See generally Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004) (applying canon of constitutional avoidance to construe regulation).

Respondents argue that Petitioner's continued detention is permissible under *Zadvydas* because her detention "is still within the presumptively reasonable six-month period." Dkt. 8 at 2. But the six-month presumption of reasonableness in *Zadvydas* is not applicable to cases, like this one, where a noncitizen has already been detained and released pursuant to Section 1231(a). Petitioner already met her burden to show that her removal is not reasonably foreseeable. Since her release, more than three years have passed without the Government attempting to obtain travel documents for Petitioner or taking any other steps to secure her removal. The Government does not enjoy another six-month presumption of reasonableness when it elected to re-detain Petitioner while it attempts, for the second time, to remove her. *See*

*Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" and collecting cases). *See also Bailey v. Lynch*, No. 16-cv-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("[T]he removal period does not restart simply because an alien who has previously been released is taken back into custody.").

The Court therefore concludes that "'[t]he burden-shifting framework from *Zadvydas* does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released" pursuant to Section 1231(a). *Espada*, 2026 WL 181539, at *5 (quoting *Yan-Ling X. v. Lyons*, No. 25-cv-01412-KES-CDB, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025)). "Under section 241.13(i)(2), when ICE revokes release to effectual removal, it is *ICE's burden* to show a significant likelihood that the alien may be removed." *Id.* (cleaned up) (emphasis in original).

Here, Respondents have not met their burden. Respondents do not state that they have obtained a travel document or identify any change in circumstances suggesting that her removal is likely in the reasonably foreseeable future. Accordingly, the Court finds that Petitioner's re-detention violated Section 1231(a)(6) and its implementing regulations.

**C. Respondents Did Not Comply with Proper Release Revocation Procedures**

Petitioner also alleges that Respondents failed to follow the required procedures for revoking her release—namely notice, an interview, and an opportunity to contest the basis for revocation. Dkt. 1 at 4-6.

When the Government revokes a noncitizen's release pursuant to Section 1231(a) based on its determination that there is a significant

likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be: (1) "notified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id*. Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

Respondents do not dispute that Petitioner was not afforded the notice, an interview, and an opportunity to be heard required by Section 241.13(i)(3). Respondents instead argue broadly that no procedural deficiencies occurred and, even if "procedural deficiencies supposedly occurred (which they did not), they do not warrant Petitioner's release and indeed could be cured by means well short of release." Dkt. 8 at 3-4 (collecting cases). However, as Petitioner observes, Respondents "offer no evidence" in support of this broad assertion and "produce no written notice of revocation, no record of an informal interview, and no determination of changed circumstances." Dkt. 9 at 2.

A "growing number of courts . . . have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release." *Nguyen v. Noem*, No. 8:25-cv-02654-HDV-DSR, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous district courts,

including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (collecting cases).

The Court agrees with the growing case law that release is an appropriate remedy for Respondents' regulatory violations. The purpose of the regulations—notice, an interview, and an opportunity to be heard—is to ensure that the Government does not wrongly revoke a noncitizen's release and deprive them of their liberty. Because Petitioner has been prejudiced by the denial of these protections, Petitioner should be returned to the status and liberty conditions she enjoyed before that unlawful denial. *See, e.g.*, *Nazarian*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Cruz v. Rios, et al.*, No. 26-01374-cv-MWF-DSR, 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (same); *Bolandi v. Noem*, No. 5:26-CV-00628-MCS-AGR, 2026 WL 485764, at *3 (C.D. Cal. Feb. 19, 2026); *Hoang v. Noem*, No. 25-cv-3177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (same). *See also Esmail*, 2025 WL 3030590, at *9 ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Limei Wei (A# 246-306-136), subject to the same conditions of her prior release, and preventing Petitioner's re-detention unless Respondents obtain a travel document for her removal and provided her adequate notice, an interview, and an opportunity to be

heard; and (3) Respondents shall file a status report within seven (7) days to confirm that Petitioner has been released from custody.

Dated: November 20, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE